

| | | |
|---|---|---|
| **MURIEL GOODE-TRUFANT**<br>*Acting Corporation Counsel* | THE CITY OF NEW YORK<br>**LAW DEPARTMENT**<br>100 CHURCH STREET<br>NEW YORK, NY 10007 | **THOMAS LINDEMAN**<br>Tel.: (212) 356-0418<br>tlindema@law.nyc.gov |

July 17, 2024

**VIA ECF**
Hon. Lorna G. Schofield
Thurgood Marshall
United States Courthouse
40 Foley Square
New York, NY 10007

      Re: *Bruckauf et al v. Banks et al.,* 24-cv-5136(LGS)(GS)
          *Ramos et al v. Banks et al.,* 24-cv-5109(LGS)(SDA)

Dear Judge Schofield:

    I am Senior Counsel in the office of Acting Corporation Counsel Muriel Goode Trufant, attorney for Defendants in the above-referenced actions.

    I write in response to the Court's July 16, 2024 Order to Show Cause (*Bruckauf,* 24-cv-5136(LGS) ECF No. 9; *Ramos,* 24-cv-5019(LGS) ECF No. 17) and in opposition to Plaintiffs' demand that this Court order Defendants to hold preliminary resolution sessions as required by 20 U.S.C. § 1415(f)(1)(B) and 34 C.F.R. § 300.510(a).

    Defendants respectfully assert that this Court should not issue the requested order because the Department of Education ("DOE") has already begun working to schedule those preliminary sessions but, in fact, has been stymied by Plaintiffs. As Plaintiffs state in their Memorandum of Law in Support (*Bruckauf,* 24-cv-5136 (LGS) ECF No. 7; *Ramos,* 24-cv-5109 (LGS) ECF No. 15) ("Pl. Mem."), each Plaintiff in these actions filed a due process complaint ("DPC") on or about July 2, 2024 seeking a finding that DOE had denied them a free appropriate public education ("FAPE") and requesting that DOE fund the unilateral placement of each student at iBRAIN for the 2024-25 school year. Pursuant to the relevant statutes, DOE is obligated to schedule a preliminary resolution session for each student by July 17, 2024, today.

    Upon receipt of those DPCs, DOE began working to process the DPCs for these students, the other 14 students represented by Plaintiffs' counsel who filed identical actions in this district only days later, and every other student who filed a DPC at the beginning of the 2024-25 extended school year. On July 11, 2024, DOE began working to schedule meetings with Plaintiffs. Upon information and belief, the first sessions were scheduled for July 12, 2024, and all sessions were

scheduled on or before the July 17, 2024 deadline.

On July 12, 2024, Peter Albert, an attorney from the Brain Injury Rights Group[1], attended a resolution meeting without his clients. Pl. Mem. p.6. Pursuant to the IDEA and CFR, the parent must attend any resolution session, but attorneys are not required. Indeed, counsel for DOE is barred from attending "unless the parent is accompanied by an attorney." 34 CFR § 300.510(a)(1)(ii). As the CFR makes clear, "The purpose of the meeting is for the parent of the child to discuss the due process complaint, and the facts that form the basis of the due process complaint, so that the [DOE] has the opportunity to resolve the dispute that is the basis for the due process complaint." 34 CFR § 300.510(a)(2). Thus, the attendance of the parent is critical.

DOE's representatives at the resolution session included a social worker with a specialized understanding of the services offered to that student as part of the IEP as well as a member of the CSE who was authorized to settle certain aspects of that Plaintiff's claim. Plaintiffs' Memorandum of Law takes issue with the fact that DOE's representatives could not agree to funding for the student's private school placement or pendency services (*id.*), but neither the IDEA nor the CFR requires DOE to agree to every demand made in a DPC during the resolution meeting. DOE's representatives were CSE members with knowledge of DOE's special education services who made themselves available to discuss the DPC and the basis of parent's complaint. They had the authority to resolve the dispute by performing additional assessments and evaluations. *See* Pl. Mem. p.6.

After failing to appear at the resolution session with his client as required by statute and taking offense at DOE's appropriate representatives, Mr. Albert informed DOE "that he would be cancelling all other scheduled meetings." *Id.* The records do Mr. Albert did not request that any specific member of the CSE appear, nor did he attempt to reschedule any of the preliminary meetings to make it easier for his clients to attend. Instead, Plaintiff's counsel filed the instant order to show cause. Mr. Albert's declaration states that he engaged in the same behavior on July 16, 2024. *See* Declaration of Peter Albert ¶28.

DOE will continue to attempt to work collaboratively with Plaintiffs as required by statute to reduce the burden on the parties, the impartial hearing system, and this Court, but without Plaintiffs' willing participation in the resolution process, it is unlikely that any resolution sessions can proceed. Plaintiffs' lack of cooperation and exclusion of parent from the resolution process also suggests a lack of genuine interested in resolution.

Turning to Plaintiffs' instant request for a preliminary injunction, Plaintiffs' request fails to meet the standards for preliminary injunctive relief and succeeds only in highlighting Plaintiffs' impermissible goal of frustrating DOE's administrative processes to prioritize the instant Student-Plaintiffs over the "thousands of funding requests under the IDEA" the DOE receives at the start of the school year. *See Mendez v. Banks*, 65 F.4th 56, 63 (2d Cir. 2023).

First, Plaintiffs cannot show a likelihood of success on the merits because DOE has made every effort to schedule the preliminary resolution sessions Plaintiffs are seeking here. Plaintiffs

---

[1] Plaintiffs' counsel appears to be operating as both "Brain Injury Rights Group" and "Liberty & Freedom Legal Group" coterminously.

themselves have hampered that process by refusing to appear at the resolution sessions and seeking to waive the statutory resolution period.

Second, Plaintiffs cannot show a likelihood of irreparable harm. Should DOE fail to hold the requested resolutions sessions, the IDEA and CFR provide that Plaintiffs may immediately proceed to the impartial hearing stage of the administrative process, relief that Plaintiffs have rushed to avail themselves of even before bringing the instant motion. "If the LEA fails to hold the resolution meeting specified in paragraph (a) of this section within 15 days of receiving notice of a parent's due process complaint or fails to participate in the resolution meeting, the parent may seek the intervention of a hearing officer to begin the due process hearing timeline." 34 C.F.R. § 300.510(b)(5). Here, Plaintiffs have stated in each DPC at issue in the five federal cases brought by Plaintiffs' counsel that "In the event DOE fails to hold the Resolution Meeting within fifteen (15) days of receipt of the Parent's DPC or fails to participate in the Resolution Meeting, then Parent is requesting that the Impartial Hearing Officer ("IHO") start the impartial hearing timeline immediately." *See Bruckauf,* 24-cv-5136(LGS) ECF Nos. 1-1 p.1, 1-2 p.1, 1-3 p.1, 1-4 p.1, 1-5 p.1, 1-6 p.1, 1-7 p.1, 1-8 p.1, 1-9 p.1; *Ramos,* 24-cv-5109(LGS) ECF Nos. 10-1 p.1, 10-2 p.1, 10-3 p.1, 10-4 p.1, 10-5 p.1, 10-6 p.1. Thus, despite filing the instant motion seeking a preliminary injunction, Plaintiffs are already seeking alternative relief at the administrative level. Indeed, a review of Plaintiffs' filings shows that Plaintiffs had contemplated shortened resolution periods and expedited administrative hearings before these actions were filed. Yet again, Plaintiffs represented by the Brain Injury Rights Group have "sprinted to federal court" (*Mendez*, 65, F.4th at 61) rather than allowing the administrative process contemplated by the IDEA to resolve itself in due course.

"Irreparable harm is the single most important prerequisite for injunctive relief, and in the absence of a showing of irreparable harm, a motion for a preliminary injunction should be denied." *Uppal v. N.Y. State Dep't of Health*, 756 F. App'x 95, 96 (2d Cir. 2019). Plaintiffs cannot make a showing of irreparable harm. Thus, their motion must be denied.

Third, the public interest is not served by the issuance of a preliminary injunction in this matter. By their conduct, it is apparent that Plaintiffs have no intention of participating in a good-faith resolution session. Plaintiffs' goal in filing the instant motions appears to be to ensure that DOE's resources are taxed through litigation while their administrative proceedings are expedited, giving DOE less time to investigate the claims raised in the DPCs and mount appropriate defenses.

The tactics employed here are identical to the unsuccessful tactics used by the Brain Injury Rights Groups in previous school years, during which they have brought at least twenty unsuccessful motions for preliminary injunction with the goal of forcing DOE to expedite its administrative procedures and to use the IDEA "to frustrate the fiscal policies of participating states." *Ventura de Paulino v. N.Y.C. Dep't of Educ.*, 959 F.3d 519, 535 (2nd Cir. 2020). Judicial endorsement of these tactics would only harm the public interest. Indeed, the filing alone frustrates DOE process by diverting resources that would otherwise be used as part of the resolution period.

Finally, the balance of hardships does not favor Plaintiffs. Plaintiffs have admitted through their retelling of the facts that DOE has made (and continues to make) reasonable efforts to schedule resolution sessions, and that Plaintiffs have refused to attend those sessions. Further,

should the resolution sessions not occur despite DOE's best efforts, the parties will proceed to the administrative hearing stage, at which point Plaintiffs will present their cases to the assigned IHOs and receive decisions on the merits. As the only relief sought in Plaintiffs' DPCs is monetary reimbursement, the nominal delay Plaintiffs seem to fear will not create the type of injury cognizable for emergency injunctive relief. *See Loveridge v. Pendleton Woolen Mills, Inc.,* 788 F.2d 914, 918 (2d Cir. 1986) ("[W]here money damages are adequate compensation, a preliminary injunction will not issue since equity should not intervene where there is an adequate remedy at law.").

As Plaintiffs do not qualify for a preliminary injunction under even one of the factors required by law, and because DOE has made good faith efforts to engage in the resolution process envisioned by the IDEA and CFR, and because Plaintiffs' instant motion is in direct contrast to their posture at the administrative level, Plaintiffs' instant motion must be denied. Should further opposition be required, Defendants respectfully request that the Court set a deadline of July 23, 2024 for that filing.

Thank you for considering this submission.

Respectfully submitted,
/s/
Thomas Lindeman
Senior Counsel

cc: Rory Bellantoni, Esq. (via ECF)